**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**EDWIN PONCE, Defendant**

Case No. SX-11-CR-736

Superior Court of the Virgin Islands

Division of St. Croix

June 25, 2015

BRADY, *Judge*

## MEMORANDUM OPINION AND ORDER

(June 25, 2015)

THIS MATTER is before the Court on Defendant's Motion for Judgment of Acquittal and accompanying Memorandum of Law in Support ("Motion"), filed February 6, 2015 and the People's Brief in Opposition ("Opposition"), filed April 30, 2015. Defendant filed his Reply to the People's Opposition on May 28, 2015.

Defendant presents several arguments by his Motion, as follows:

(A) Defendant was denied his right to trial by an impartial jury, in that (1) the jury was selected with the participation of former co-Defendant Edwin "Cepi" Rivera and his counsel, prior to Rivera's case being severed the following day; (2) Defendant was stripped of his ability to argue that Edwin Rivera, and not he, had committed the offenses charged as a result of "the sympathy factor that came into play when the court

announced that because of medical reasons the trial was proceeding with only Edwin Ponce."(Motion, 4); and (3) that when the Court read the Information to the jury, it read the name of Defendant first even though Edwin Rivera's name appeared first on the Information as written.

(B) Defendant was denied due process when the Court severed Edwin Rivera's case from that of Defendant on the People's motion after jury selection despite the requirement of FED. R. CRIM. P. 12(b)(3)(D) that a motion to sever charges or defendants must be made before trial.

(C) The trial evidence was insufficient to sustain convictions (1) for aiding and abetting (Counts One through Six of the Fourth Superseding Information)[1]; (2) for the crimes that occurred on August 29, 2011[2]; and (3) for the crimes set out in Counts Ten through Twelve (incorrectly referenced in the Motion as Counts Eleven through Thirteen) relating to possession of a firearm and ammunition on September 24, 2011.

(D) Defendant was denied due process when the Court denied Defendant's motion to exclude photographs that had not been tendered in pretrial discovery.

For the reasons that follow, Defendant's Motion will be denied.

## BACKGROUND

On August 29, 2011 at approximately 9:30 p.m. Carlos Juan Rosa was shot and killed at his home in Old Fredensborg in the judicial district of St. Croix. Before he died Mr. Rosa told his wife, Bettyn Rosa, that "Cepi" had shot him, a reference to former co-Defendant Edwin Rivera. Trial Transcript ("TT"), May 31, 2013, p. 124. Mrs. Rosa testified that she looked out the bedroom window following the shooting and saw Defendant Edwin Ponce outside in the yard together with Edwin Rivera. *Id.* 131-135.

---

[1] The Fourth Superseding Information was filed May 31, 2013, as to only Defendant Ponce, following severance of Rivera from the case. On June 5, 2013, the Court granted the People's Motion to dismiss Count Six of the Fourth Superseding Information (Disturbance of the Peace). TT, June 5, 2013, p. 75. The Court granted the People's unopposed motion to modify the Fourth Superseding Information, dated and filed June 6, 2011, to eliminate the former Count Six, to renumber the remaining counts, and to eliminate surplus language from the counts alleging Reckless Endangerment. *Id.* 134-136.

[2] The Motion refers to the insufficiency of evidence presented through the testimony of the decedent victim's widow as to Counts Six through Ten although, following the dismissal of the Disturbance of the Peace count and the renumbering of the remaining counts, the reference should correctly be to Counts Six through Nine.

One day earlier, on August 28, 2011, Defendant Ponce and Edwin Rivera had visited the Rosas' home and spoken with Carlos Rosa. According to Mrs. Rosa, Defendant Ponce, accompanied by Edwin Rivera, threw rocks at their bedroom window and accused Carlos Rosa of stealing from him.[3] *Id.* 79-82. Upon noticing Mrs. Rosa looking out of her window, Ponce pointed a silver revolver handgun at her. *Id.* 83. Mrs. Rosa stated that, while departing the area, Ponce fired four shots into the air. *Id* 90.

The following day, before the shooting, Mrs. Rosa observed a physical altercation between Edwin Rivera and her husband, during which Ponce was present. *Id.* 91. Jose Crispin testified at trial that he witnessed a fight between Rosa and Edwin Rivera relating to stolen goods, although he did not recall how close in time it was to Rosa's killing. He corroborated Mrs. Rosa's testimony that Ponce was in attendance. TT, June 3, 2013, pp. 68, 76. Mrs. Rosa testified that Edwin Rivera told her husband "don't worry you gon see what gon happen to you." TT, May 31, 2013, p. 93. Mrs. Rosa further testified that in her husband's absence, Defendant Ponce came into her yard and, speaking to Mrs. Rosa, stated that he wanted his "thing" back and, if not returned, Ponce told her that "something will go on in there," which she understood to mean "he gon do something bad. That he gon hurt we because he saying to me and my husband." *Id.* 104-105.

Mrs. Rosa recalled the events that unfolded later that night: Both she and her husband were lying in bed when they heard stones thrown against their front window.[4] *Id.* 107. Mr. Rosa asked who was there. When no one answered, he got up from bed and proceeded to the front door and, upon opening it half way, was struck by a barrage of gun fire. *Id.* 108, 114. Mr. Rosa stumbled inside and collapsed on their bed, telling his wife that Cepi had shot him. *Id.* 124. After her husband was shot, Mrs. Rosa opened the bedroom window, looked outside and saw Defendant Ponce, whom she had known for seven years, together with Edwin Rivera. Ponce was

---

[3] Araceli Rivera, stepmother of Edwin Rivera (TT, June 3, 2013, p. 92), testified that, on either August 28 or 29, 2011, Ponce and Edwin Rivera surrounded and confronted her son, Luis Ortiz, about whether Ortiz had broken into the house that Ponce and Edwin Rivera shared and stolen his "thing." *Id.* 92-95.

[4] Araceli Rivera also testified that she heard rocks being thrown, one of which hit her cistern, shortly before hearing gunfire on the night Mr. Rosa was killed. TT, June 3, 2013, p. 90.

"walking duck down" while exiting the property. *Id.* 131-134. According to Mrs. Rosa, Ponce was holding a black gun in his hand and shot into the air several times. *Id.* 135.

At the trial, the following non-eyewitness evidence was introduced in support of the People's case: Dr. Francisco Landron performed an autopsy and prepared a report, concluding that Carlos Rosa's cause of death was a gunshot wound to the chest (TT, June 4, 2013, p. 186); Sergeant Hermina Rivera, the first officer on scene following the shooting, testified that Mrs. Rosa told her they observed Ponce and Rivera outside after the shooting and that both men exited the area in Ponce's gray jeep (TT, June 3, 2013, p. 65); Corporal Luis Encarnacion, tasked with gathering forensic evidence, testified that he collected one .40 caliber shell casing and four .223 caliber shell casings from the roadway adjacent to the Rosas' residence. (*Id.* 128, 131, 136, 139, 140, 145; Exhibits 27, 28, 30, 31, 32, 33).

The People presented testimony concerning a separate incident at a later date which gave rise to Counts Ten through Twelve. On September 24, 2011, Corporal Encarnacion participated in the arrest of Defendant Ponce at 160-B Old Fredensborg while executing a search warrant. Motion, 5. During the search, he recovered a silver .38 caliber handgun with an obliterated serial number containing five rounds of ammunition located, in plain view, fifty-two feet from Ponce's residence.[5] TT, June 4, 2013, pp. 7, 15-16, 43.

During the search of Ponce's sleeping area, officers recovered a pair of pants containing twelve live .38 caliber bullets.[6] TT, June 3, 2013, pp. 201, 206-207, 211. Police also recovered approximately $13,000 in cash in a small bag in the same room where pants with ammunition were

---

[5] During trial, Detective Karen Stout, the Virgin Islands Police Department's firearms supervisor, testified that Ponce was not authorized to possess a firearm between August 28, 2011 and September 24, 2011. TT, June 4, 2013, pp. 170-171. Additionally, Detective Reynaldo DeSouza, a firearms examiner with the Virgin Islands Police Department, testified that the .38 caliber handgun recovered on September 24, 2011 was an operable firearm. *Id.* 96-97.

[6] Detective Dino Herbert, the lead investigator who participated in the search of Defendant's residence, testified that upon knocking on Defendant's door he heard footsteps which indicated Ponce was moving around inside. Concerned that evidence may be destroyed, Det. Herbert ordered a breach of Defendant's dwelling. TT, June 5, 2013, p. 41. It was at this time that the ammunition and cash were seized.

found. *Id.* 206. That money was returned to Ponce on his motion prior to trial.

At trial, Christine Tuttle, Defendant's former girlfriend, testified that she and Ponce were sleeping together when police knocked on the door on September 24, 2011. When awakened, Ponce jumped out of bed and moved into a different room for a matter of seconds, returning to the bedroom shortly before the police breached the door and entered the residence. TT, June 4, 2013, pp. 193-195.

A jury was empaneled to hear the instant case on May 28, 2013. On June 6, 2013, Defendant was found guilty by a unanimous jury on all twelve Counts, including Murder in the First Degree.[7] Defendant moves for judgment of acquittal based on several alleged errors.[8] First, Defendant argues that it was improper for the Court to sever Defendant's trial from former co-Defendant Edwin Rivera after both had participated in jury selection and the jury had been empaneled. Motion, 3. Defendant alleges that severance engendered sympathy for Edwin Rivera, thus depriving Defendant of effective use of his intended defense that "it wasn't me, it was him." *Id.* 4. Further, Defendant alleges that, pursuant to FED. R. CRIM. P. 12(b)(3), the People's motion to sever was untimely as the Rule specifically mandates that such a motion must be made before trial. *Id.* 4-5. Additionally, Defendant argues that, because the Court read the Information to the jury panel during jury selection listing Defendant's name first (instead of listing Edwin Rivera first, as the Information actually read), the jury may have thought Defendant was the "leader or instigator," thus denying him an impartial jury. *Id.* 4.

Second, Defendant argues that the People failed to present sufficient evidence that Defendant aided and abetted in the commission of the

---

[7] Count One – Assault in the Third Degree against Carlos Juan Rosa; Count Two – Assault in the Third Degree against Bettyn Rosa; Count Three – Reckless Endangerment in the First Degree (August 28, 2011); Count Four – Unauthorized Possession of a Firearm (August 28, 2011); Count Five – Possession of Ammunition (August 28, 2011); Count Six – Murder in the First Degree; Count Seven – Unauthorized Possession of a Firearm (August 29, 2011); Count Eight – Reckless Endangerment in the First Degree (August 29, 2011); Count Nine – Possession of Ammunition (August 29, 2011); Count Ten – Unauthorized – Possession of a Firearm (September 24, 2011); Count Eleven – Possession of Ammunition (September 24, 2011); and Count Twelve – Possession of a Firearm with Altered or Obliterated Identifying Marks (September 24, 2011).

[8] Defendant's delay in filing the instant Motion is the result of the Court's granting additional time to permit the trial transcript to be produced.

crimes charged in Counts One through Six. Specifically, Defendant argues that "there was not sufficient evidence to establish that Edwin Ponce knew of and attempted to facilitate . . ." the crimes charged in Counts One through Six. Motion, 6. Defendant, while admitting that there may be sufficient evidence to find that someone committed the crimes charged, argues that there is not ". . . a scintilla of evidence which would show that Edwin Ponce knew of and/or attempted to facilitate the crimes charged herein" and that "mere presence" is not sufficient to sustain a conviction. Motion, 6-7.

Third, Defendant argues that the People failed to present sufficient evidence that Defendant aided and abetted in committing the crimes that occurred on August 29, 2011, charged in Counts Seven through Nine. Defendant points to the lack of forensic evidence tying Defendant to the crime scene, and notes that Mr. Rosa's dying statement specifically mentioned Cepi, not Ponce. *Id.* 7-8. Additionally, only Mrs. Rosa identified Ponce as being present during the shooting and that identification lacks credibility due to the poor lighting. *Id.* 8.

Defendant also argues that the People failed to present sufficient evidence that Defendant committed the crimes charged in Counts Eleven through Thirteen.[9] Specifically, Defendant argues that, despite testimony that officers were surrounding the residence and the windows were closed, no one witnessed Defendant throw a handgun into an adjacent yard. Motion, 9. Defendant claims that no forensic evidence links Defendant to the weapon and the fact that the gun was dirt free indicates it was placed instead of thrown on the ground. *Id.*

Finally, Defendant argues that the Court erred in admitting certain exhibits which were not produced during discovery thereby depriving Defendant due process. Specifically, Defendant refers to photographs taken of the dwelling and surrounding area where Defendant was arrested on September 24, 2011. He argues that, had these been provided in discovery, Defendant may have been able to discover exculpatory information, possibly by locating additional witnesses and by seeking to reenact throwing the gun from the house as alleged by the People. *Id.* 10.

---

[9] Defendant incorrectly references the former Information, citing Counts Eleven through Thirteen, although his argument relates to Counts Ten through Twelve of the final version of the Fourth Superseding Information filed June 6, 2013.

## DISCUSSION

■ The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a fair and impartial jury. FED. R. CRIM. P. 24, applicable per SUPER. CT. R. 7, establishes the process by which a jury is selected to ensure the defendant receives a fair trial. *See also Mu'Min v. Virginia*, 500 U.S. 415, 431, 111 S. Ct. 1899, 114 L. Ed. 2d 493 (1991) ("*Voir dire* examination serves the dual purpose of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges.") A defendant who believes that he was denied the right to a fair and impartial jury may move for judgment of acquittal pursuant to FED. R. CRIM. P. 29 or request a new trial pursuant to V.I. SUPER. CT. R. 135.

■ When reviewing a jury's verdict to ensure there existed sufficient evidence for the defendant to be convicted, a court ". . . must affirm the jury's verdict as long as substantial evidence was presented at trial to allow a rational trier of fact to convict when evidence is viewed in a light most favorable to the government." *Fahie v. People*, 62 V.I. 625, 630 (V.I. 2015) (*citing Webster v. People*, 60 V.I. 666, 678-79 (V.I. 2014)).

### 1. Defendant was not denied his right to a fair and impartial jury when the Court properly granted the People's motion to sever co-Defendant Rivera from the trial.

Defendant argues that he was denied an impartial jury because former co-Defendant Rivera, who participated in jury selection, was severed from Ponce's trial due to a medical condition affecting his attorney after the jury was impaneled.

■ "The decision to sever a trial is left to the sound discretion of the District Court." *United States v. Savage*, 2012 U.S. Dist. LEXIS 179203, at *13 (E.D. Pa. Dec. 18, 2012); *United States v. Ginyard*, 65 Fed. Appx. 837, 838 (3d Cir. 2003) ("Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."); *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981) ("Motions for severance rest in the sound discretion of the trial judge, whose determination should not be disturbed in the absence of an abuse of discretion."); *United States v. Albowitz*, 380 F. Supp. 553, 555 (E.D. Pa. 1974).

466

FED. R. CRIM. P. 12(b)(3) addresses "motions that must be made before trial" stating that "the following defenses, objections, and requests must be raised by pretrial motion *if the basis for the motion is then reasonably available* and the motion can be determined without a trial on the merits: . . . (D) severance of charges or defendants under Rule 14" (emphasis added).

█ A court has the duty to ensure a fair trial and can cure perceived prejudice through statements and instructions to the jury. Every criminal trial presents prejudice to a defendant; the primary issue is whether that prejudice rises to such a high level that it warrants a reversal of a jury's verdict. *See James v. People of the Virgin Islands*, 59 V.I. 866, 885 (V.I. 2013) ("Accordingly, the trial court's rejection of the statement and subsequent curative instruction were sufficient to cure the inadmissible statement of the witness.")

█ In this case, there was no reason to sever the trial of Ponce from that of co-Defendant Rivera until after the jury was selected. On the day before opening arguments began (May 30, 2013), Edwin Rivera's attorney advised that he had suffered a severe medical malady that prevented him from continuing with the trial. Defendant Ponce had previously filed a Motion to Sever and for a Trial Date Certain, on May 23, 2012, which the Court by Order entered February 25, 2013 denied as to severance, but granted as to setting May 28, 2013 as the date certain for trial.

Following jury selection, on May 30, 2013, after jury selection but prior to the start of trial, co-Defendant Rivera's counsel advised counsel and the Court of a medical condition that arose during the prior night for which he needed to seek medical advice that same day. Ponce made an oral motion to sever the cases and to proceed to trial immediately as to Defendant Ponce alone. Defendant objected to continuing the trial one day following news of co-Defendant Rivera's counsel's medical conditions. Counsel stated that the medical issue relating to co-Defendant's counsel "does not have any bearing on Edwin Ponce's case. His defense and his trial must stand on its merits, and the jury must consider him separate and apart from Edwin 'Cepi' Rivera." (TT, May 30, 2013, pp. 6-7). Ponce objected to the release of the jury on May 30, 2013 to allow his co-Defendant's attorney time to consult with his physician to determine if he was medically fit to proceed.

Edwin Ponce has been ready and ready to go. Edwin Ponce is ready to go and his right to a speedy trial is being denied. His Constitutional rights are being abridged. He strongly, for the record, objects to the jury being released today, objects to the fact that he has not been able to go to trial. . . . The defense for — neither his defense for, the defense of Edwin Ponce, the defense of Edwin "Cepi" Rivera relies on either of the other. They each stand charged before this Court as individuals and they should each be treated as such. *Id.* 8-9.

The Court took Ponce's motion to sever under advisement pending word from co-Defendant's counsel as to whether he was medically cleared to proceed. *Id.* 11-12.

However, on the following morning of the commencement of trial, when it was confirmed that Edwin Rivera's attorney could not proceed to trial, Ponce changed his position and withdrew his motion to sever. TT, May 31, 2013, p. 5. The People made an oral motion to sever which the Court granted over Defendant's objection. Ponce also moved for a mistrial based upon perceived prejudice that he alleged could not be eradicated by a curative instruction. That motion was denied. *Id.* 9-14.

The Court determined that no manifest necessity required a mistrial and that a curative instruction to the jury to address the perceived prejudice to Ponce constituted an appropriate less disruptive alternative. The Court instructed the jury: "Up until now we have been — you have been dealing with two cases, the People versus Mr. Ponce, and the People versus Mr. Rivera. The two cases have been severed. From this point on you will be dealing only with the case of the People versus Mr. Ponce. You should make no inferences of any type as a result of this development." *Id.* 34.

■ Defendant further argues that he was prejudiced during preliminary instructions to the jury by the Court listing his name first when reading the Information to the jury, despite the fact that Edwin Rivera's name was actually listed first in the Information as then written. Motion, 4. The Court inquired whether its inadvertent error required a curative instruction to the jury, to which counsel responded "I don't think so." TT, May 29, 2013, p. 110.[10] In the absence of any claim of error or prejudice,

---

[10] The Fourth Superseding Information in its final form was amended by the People's un-opposed motion to eliminate former Count Six, and to amend the wording as to form but not

the Court finds that this reading of the preliminary instructions to the jury did not adversely affect the impartiality of the jury or the fairness of the jury trial.

## 2. The People presented sufficient evidence for a reasonable jury to conclude that Ponce committed the acts charged in Counts One through Nine.

Defendant argues that, while there is sufficient evidence that Edwin Rivera committed the crimes charged, there was insufficient evidence linking Ponce to the commission of those crimes, which evidence was sufficient only to establish Ponce's mere presence at the crime scenes.

 The Virgin Islands Supreme Court has held that "under Virgin Islands law, a person charged as a primary actor can be convicted as an aider and abettor." *Hughes v. People of the Virgin Islands*, 59 V.I. 1015, 1019 (V.I. 2013) (citing *Todman v. People*, 59 V.I. 675, 683 (V.I. 2013)). Aiding and abetting is governed by 14 V.I.C. § 11(a), which states that "Whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Further, to ". . . obtain a conviction on aiding and abetting the People were required to show that [Defendant] 'associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or actions to make it succeed.'" *Freeman v. People of the Virgin Islands*, 61 V.I. 537, 542 (V.I. 2014) (citing *Nanton v. People*, 52 V.I. 466, 484 (V.I. 2009)).

 "When determining whether a jury's verdict is supported by sufficient evidence, this Court may not usurp the role of the jury by re-weighing the evidence and re-assessing the credibility of witnesses." *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009). Defendant correctly states that the People must prove that Defendant participated in the crimes charged and was not merely present or a spectator. Motion, 7. (*See People v. Clarke*, 55 V.I. 473, 481 (V.I. 2011)).

 In this case, viewing the evidence in the light most favorable to the People, the jury received ample evidence that Defendant Ponce was not merely present with Edwin Rivera when the crimes charged were

---

as to substance. TT, June 5, 2013, pp. 134-36. That final version of the charging document does, in fact, list Defendant Ponce's name first, such that the preliminary instructions to the jury coincided with the charges as presented to the jury.

committed, but that he also undertook a course of action with Edwin Rivera, desiring the ultimate outcome reflected in the crimes charged.

Mrs. Rosa testified that, on August 28, 2011, she looked out of her window and saw Ponce point a silver revolver handgun at her. TT, May 31, 2013, p. 83. Further, she told the jury that while departing the area, Ponce fired several shots into the air. *Id.* 90.

Mrs. Rosa's testimony as to the events of August 28, 2011 was corroborated by Sgt. Hermina Rivera who testified that she responded to a call of shots fired on the evening of August 28, 2011. Carlos Rosa and Mrs. Rosa separately told her that each had observed Defendant Ponce and Edwin Rivera outside their house on August 28, 2011. Each told her that Edwin Rivera fired three shots while in their front yard. TT, June 3, 2011, p. 60. Mrs. Rosa told Sgt. Rivera that following the incident, both men exited the area in Ponce's gray jeep. *Id.* 65.

Based upon the People's proofs, as to Counts One through Five, there was evidence sufficient to permit a rational trier of fact to determine that Ponce was not only physically present when crimes were committed on August 28, 2011, but that he actively participated in those crimes.

Mrs. Rosa also testified that, on the afternoon of August 29, 2011, she observed a fight between Edwin Rivera and her husband, during which Ponce was present. Following that fight, she stated that Ponce returned to her house and told her "that he want he thing back. And if I — if we don't give he, something will go on in there." TT, May 31, 2013, p. 105. Mrs. Rosa testified that she understood those words to mean "[t]hat he gon do something bad. That he gon hurt we because he saying to me and my husband." *Id.*

Mrs. Rosa's testimony as to the events of the afternoon of August 29, 2011 was corroborated by Jose Crispin, who stated that he had witnessed a fight between Mr. Rosa and Edwin Rivera, at which Defendant Ponce was present. TT, June 3, 2013, pp. 68, 76.

Recounting the shooting later that night that left her husband dead, Mrs. Rosa testified that after her husband was shot, he told her to call police and to call an ambulance as "Cepi" had shot him. TT, May 31, 2013, p. 124. However, she further testified that, following the shooting, she looked outside and personally observed Defendant Ponce, whom she knew for seven years prior, and Edwin Rivera. *Id.* 131. She testified that she saw Ponce "coming out of the yard walking duck down." *Id.* 133-134.

According to Mrs. Rosa, Ponce held a black automatic handgun, a different gun than that he pointed at her the day before, and that he shot into the air "a lot" of times. *Id.* 134-136.

The evidence, viewed in the light most favorable to the People, was sufficient to permit a rational jury to determine that Ponce actively participated in the crimes that occurred on August 29, 2011, including the murder of Carlos Rosa.

 A court is generally "prohibited from weighing the evidence or determining the credibility of witnesses." *Williams v. People*, 56 V.I. 821, 835 (V.I. 2012) (*citing Smith v. People*, 51 V.I. 396, 401 (V.I. 2009)). Here, examining the evidence in the light most favorable to the prosecution, the Court concludes that there was sufficient evidence for a reasonable jury to determine beyond a reasonable doubt that Defendant Ponce, acting personally or as an aider and abettor, was guilty of the commission of Counts One through Nine.

### 3. The People presented sufficient evidence for a reasonable jury to conclude that Ponce committed the acts charged in Counts Ten through Twelve.

Defendant argues that, for several reasons, the evidence presented at trial, either explicitly or implicitly, was insufficient for a jury to lawfully convict Ponce of the crimes charged in Counts Ten through Twelve. He argues that no testimony was presented that anyone witnessed an object being thrown from Ponce's dwelling to an adjacent yard, despite the fact that officers were surrounding the property at the time the People allege that Ponce disposed of the gun; that there was no testimony that anyone heard a door or window open to facilitate the disposal of the gun; that the firearm retrieved from the adjoining yard was clean and dirt free, indicating it may been have placed on the ground instead of thrown; and that there was no evidence offered confirming that the pants found containing bullets actually belonged to Ponce. Motion, 9.

The Court instructed the jury that "possession" included constructive possession: "A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person, is then in constructive possession of it." Final Jury Instruction, 27. Defendant does not challenge this instruction.

██ Based on the evidence presented at trial, viewed in the light most favorable to the People, the Court concludes that the People presented sufficient information that a reasonable jury could convict Defendant on Count Ten (Unauthorized Possession of a Firearm), Count Eleven (Possession of Ammunition), and Count Twelve (Possession of a Firearm with Altered or Obliterated Identifying Marks). Corporal Encarnacion testified that the weapon was found fifty-two feet, arguably within throwing distance, of Defendant's dwelling. TT, June 4, 2013, p. 43. Det. Herbert testified that, just before breaching Defendant's dwelling, he heard movements inside. TT, June 5, 2013, p. 38. Det. Herbert stated that, upon entry, officers recovered a pair of pants containing twelve live .38 caliber bullets located near the bed where Ponce's girlfriend was lying. *Id.* 40. Police also recovered approximately $13,000 in cash near where the ammunition was found. TT, June 3, 2013, p. 43. Ponce claimed that the money belonged to him, and it was returned to him pursuant to his pretrial motion.

During trial, Detective Karen Stout, the Virgin Islands Police Department's firearms supervisor, testified that Ponce was not authorized to possess a firearm in the Virgin Islands between August 28, 2011 and September 24, 2011. TT, June 4, 2013, pp.170-171. Cpl. Encarnacion testified that the recovered .38 caliber handgun had an obliterated serial number. TT, June 3, 2013, p. 201.

Additionally, Detective Reynaldo DeSouza, a firearms examiner with the Virgin Islands Police Department, testified that the .38 caliber handgun recovered on September 24, 2011 was an operable firearm. *Id.* 96-97. This evidence was sufficient for the jury to conclude that Defendant had constructive possession over the handgun and ammunition, that the handgun had obliterated identifying marks and that he did not have a license to lawfully own a firearm or ammunition.

### 4. Defendant Ponce's Due Process Rights were not violated by the People's introduction of certain photographs and other evidence.

Defendant argues that the photographs not produced until the eve of trial, admitted into evidence over his objection, ". . . were material to Edwin Ponce's defense as he could have used the photographs to locate possible witnesses and/or to formulate his defense as to the charges in Counts Eleven through Thirteen." Motion, 10.

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure states that: "Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial . . ."

■ Courts have held that:

[A] trial court should balance three factors in determining which of these actions, if any, it should take to address a discovery violation by the government: (1) The reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.

*People of the Virgin Islands v. Rodriguez*, 2010 V.I. Supreme LEXIS 15, at *1-11 (V.I. 2010) (unpublished) (*citing United States v. Martinez*, 455 F.3d 1127, 1130 (10th Cir. 2006)).

■ In this case, it is clear that the People did use the evidence in question during its case in chief, thus violating the disclosure obligations of the Government under Rule 16. However, balancing the three factors it does not appear that the People's omission was done with any level of malice; rather it was a mistake. Second, Defendant Ponce experienced little, if any, prejudice as the evidence in question was not on its face beneficial to Defendant's case. Rather, he argues, earlier production may have led to the discovery of other evidence that may have been beneficial to him. This speculation without articulated specificity as to beneficial evidence that may have been discovered does not reach the threshold needed to overturn the jury's verdict as to Counts Ten through Twelve. Finally, the Court did provide Defendant a full day's recess to inspect the scene in light of the newly produced photographs. (Further, because the trial was delayed an additional day on account of the health issues affecting counsel for the co-Defendant, and the passing of a full weekend before the evidence was presented at trial by the People, Ponce had ample

time to conduct whatever tests and interviews he deemed necessary in light of the photographs.)

Balancing these factors, the Court cannot conclude that Defendant's due process rights were violated by allowing the People's photographic evidence in question to be presented to the jury.

On the basis of the foregoing, it is hereby

ORDERED that the Defendant's Motion for Judgment of Acquittal is DENIED.