UNITED STATES of America,
Appellant,

v.

Earl MARTIN and De Berard Cattle Company, Appellees.

No. 5960.

United States Court of Appeals
Tenth Circuit.

May 27, 1959.

Rehearing Denied July 1, 1959.

William H. Veeder, Washington, D. C. (J. Lee Rankin, Perry W. Morton, Washington, D. C., Donald E. Kelley, Denver, Colo., Roger P. Marquis, Washington, D. C., H. Lawrence Hinkley, Denver, Colo., and Walter B. Ash, Washington, D. C., were with him on brief), for appellant.

Frank Delaney, Glenwood Springs, Colo., for appellees.

Before MURRAH, PICKETT and LEWIS, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from an order of the trial court allowing appellees to jointly intervene, and from a judgment on De Berard Cattle Company's counterclaim, in this declaratory class action by the United States, for an adjudication of the respective rights of the affected parties, to the use of water of the Colorado River, arising out of the Colorado Big-Thompson diversion project.

This project had for its primary objective the diversion of the waters of the Colorado River from the Western Slope to the Eastern Slope of the Rockies for irrigation purposes, by means of a system of reservoirs, canals and a 13-mile transmountain tunnel. The initial funds for the project were appropriated by the Act of August 9, 1937, 50 Stat. 595, "for construction in accordance with the plan described in Senate Document Numbered 80, Seventy-fifth Congress." The Document, embodying the salient features of the project, was Congressional sanction for a conciliation of conflicting interests of affected water users on both sides of the Rockies. The project, as described in the Document, contemplated a change in the regimen of the Colorado River with consequent modification of vested water rights on the Western Slope. And, it accordingly provided for the construction of reservoirs to impound and hold surplus waters for the primary purpose: "(1) to preserve the vested and future rights in irrigation", and "(5) to maintain conditions of river flow for the benefit of domestic and sanitary uses of this water." To that end, Paragraph 5(j) of the Document pertinently provided for an "adequate system as determined by the Secretary of the Interior * * * for the irrigation of the lands in the vicinity of Kremmling, now irrigated by either natural or artificial means, and the installation made therefor shall be a part of this project. The rights to the use of water for the irrigation of these lands shall be considered to have a date of priority earlier than that of the rights to the use of water to be diverted through the works of this project to the Eastern Slope."

The Secretary of the Interior was charged with the responsibility of constructing and operating the project for the effectuation of the declared beneficial purposes. And, when the project was near completion, the United States brought this declaratory class action seeking a construction of the provisions of Document 80, and for an adjudication

of the rights and liabilities of the affected parties thereunder, including the duties and responsibilities of the Secretary of the Interior to manage and operate the same. It was specifically alleged that by reason of its incorporation by reference in the appropriating act, Senate Document 80 had the force and effect of law and was therefore binding upon the Government and all those who now or hereafter use any of the water impounded and released from the Green Mountain Reservoir; that it was also "contractual in nature" and therefore binding on all parties; and that actual controversies exist concerning the priority rights and dates of the waters involved in the project, not only between water users on the Western Slope, but as between water users on the Western and Eastern Slopes as well.[1] The affected water users were alleged to fall into three distinct classes: first, those claiming rights in the Colorado River for domestic and irrigation purposes; second, generation of electricity; and third, industrial purposes.

The court was asked, inter alia, (1) to declare whether the United States was legally bound to maintain the project in conformity with the provisions of Senate Document 80, and if so, to adjudicate and determine the nature and extent of the liabilities, duties and obligations owing to the respective parties and classes of which they were representative; to settle all rights and interests between the respective parties as they may arise on the trial of the case, and to quiet the title of the United States and the respective parties to such adjudicated rights.

The appellees, De Berard Cattle Company, Earl Martin, and others not directly involved in this appeal, are the owners of ranch and meadow lands near the confluence of the Blue and Colorado Rivers, who have for many years depended upon the overflow of the River for natural irrigation of the meadow lands. In their motion to intervene, it was alleged that the controversies between the United States and these movants were in various particulars different from the controversy between it and other defendants; that the representation of the movants' interest by existing parties is or may be inadequate; that the movants would be bound by any judgment entered in the action; and furthermore common questions of law and fact inhere in the movants' answer and counterclaim and the main action. The answer and counterclaim specifically referred to the declared purpose of Senate Document 80 "to preserve the vested and future rights in irrigation", and "to maintain conditions of river flow for the benefit of domestic and sanitary uses of this water." Reference was also made to Subparagraph 5(j) of the Document relating to the rights of landowners like the intervenors, whose lands were irrigated by natural means, and the duty of the Secretary of the Interior to provide an adequate system for the irrigation of these lands. It was then alleged that the construction of a reservoir upstream from the intervenors' lands had diminished the seasonal overflow of the intervenors' lands, thus depriving them of their vested right to the irrigation of their meadow lands by natural means. It was alleged that the Secretary of the

1. "XI. Thus, actual controversies exist, not only as to whether the priority rights and dates, to which the Colorado-Big Thompson Project is entitled, to the waters of the Colorado River and the Blue River and their various tributaries are senior to the claim of the defendants, the City and County of Denver, the Moffat Tunnel Water and Development Company and the City of Colorado Springs, but also as to the divergent interests of the water users on the Eastern and Western Slopes of the Rocky Mountains respecting their rights to the water from the Colorado-Big Thompson Project, controversies which directly involve the rights and responsibilities of the plaintiff in the administration of the Colorado-Big Thompson Project and the distribution of the water developed by that project between the opposing parties, and likewise, the nature and extent of the responsibility emanating from said Senate Document No. 80."

Interior had refused to provide an adequate system for the artificial irrigation of the lands, as a result of which De Berard Cattle Company was compelled to construct a dam and other works on Big Muddy Creek and other like works, which, when completed, would cost more than $5,000. Other items of damages were later claimed by amendment in the aggregate of $10,000 for which judgment was prayed.

After challenging the sufficiency of the counterclaim to state a claim on which relief could be granted, the United States moved to dismiss it as an unconsented suit against it, and as one wholly unrelated to the gravamen of the Government's suit. The court denied the motion to dismiss, allowed intervention and then entered judgment in the original action in accordance with stipulated facts, fully adjudicating the rights and duties of all the parties to the original action, but reserving the issues tendered by the counterclaim for future disposition.

On the trial of these issues, the court found that the intervenors Martin and De Berard Cattle Company had for many years owned lands which were irrigated by the natural overflow of the Colorado River and its tributaries, and were part of the lands for which the adequate system of irrigation was to be provided under Subparagraph 5(j) of Senate Document 80; that such Document was negotiated and designed to effect contractual relations between the United States and water users whose water rights would be affected by the operation of the project, unless precautionary measures were taken to prevent injury; that the vested interest of the intervenors in the natural overflow of the river had been greatly impaired by the impounding of the water in the reservoirs upstream; that the United States undertook and agreed in Document 80 to provide an adequate system of irrigation for the said lands, but had failed to do so. The court retained jurisdiction in order to give the Secretary of the Interior reasonable time in which to provide an adequate system of irrigation in lieu of the impairment of intervenors' water rights, and when the Government declined to take any further steps, the court then entered judgment in accordance with the findings of fact in favor of the intervenor, De Berard Cattle Company, in the sum of $10,000. No final judgment was entered for intervenor Martin, and he has moved to dismiss this appeal for that reason.

■ Denying that the intervention was authorized by Rule 24, F.R.Civ.P., 28 U.S.C.A., the United States emphasizes the difference in the character of the relief sought and adjudicated in the main action, and the relief sought by this counterclaim. The independence of the two actions is said to lie in the fact that in the main suit, the United States sought a determination of the priorities of the various claimed water rights and a construction of its duties and responsibilities under the requirements of Senate Document 80 relating to the release of the water under the system of irrigation, but not including the rights and duties of the Government and the class who, like the intervenors, claim overflow rights in the diverted water. In that regard, our attention is called to the intervenors' pleadings to the effect that the controversy between the Government and the intervenors is "in very essential particulars different from the controversy and dispute between plaintiff and any of the defendants in this case."

True, the declaratory class action failed to name any of the owners of the lands with overflow rights as parties defendant, or as members of a representative class. Indeed, the complaint astutely avoided any reference to overflow rights or to seek their adjudication in the main action. The suit did, however, sweepingly and comprehensively invoke Senate Document 80 and prayed for an adjudication of the rights of the parties having or claiming an interest in the diverted water. The judgment in the main action did not purport to adjudicate the intervenors' asserted rights. But it was entered with an eye to the

counterclaim and after the court had taken cognizance of it. We do not know what course the judgment would have taken absent the intervention. As a judgment in a class action, it might very well have been drawn to adjudicate the interests asserted in the counterclaim. In these circumstances, the intervenors should not be expected to suffer a judgment in the proceedings without asserting a litigable interest therein. The motion for intervention pleaded in the language of Rule 24(a) (2) and (b) (2) F.R.Civ.P. that representation of their interest by the existing parties may be inadequate, and that they may be bound by the action; and that in any event, common questions of law and fact were presented.

■ We agree with the trial court that the motion stated grounds for intervention under Rule 24(a) (2) and (b) (2). But even so, the intervention is not of right or permissive if the relief sought is not within the jurisdiction or powers of the court. For neither forms of action nor modes of procedure operate to confer jurisdiction not otherwise extant. The Government does not ipso facto relax its traditional immunity from suit by becoming a suitor in the courts. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058. But the legislative and decisional trend is toward relaxation of governmental immunity. I. e. see National City Bank of New York v. Republic of China, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389; United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523. And, it is now established beyond doubt that "When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter." United States v. The Thekla, 266 U.S. 328, 339, 45 S.Ct. 112, 113, 69 L.Ed. 313; American Propellor & Manufacturing Co. v. United States, 300 U.S. 475, 57 S.Ct. 521, 81 L.Ed. 751. "This amenability to suit has become a commonplace in regard to the various agencies which carry out 'the enlarged scope of government in economic affairs.'" National City Bank of New York v. Republic of China, supra [348 U. S. 356, 75 S.Ct. 426], quoting from Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L. Ed. 784.

■■ From this it may be fairly said that when the United States institutes a suit, it thereby consents by implication to the full and complete adjudication of all matters and issues which are reasonably incident thereto. And, in such role, it "subjects itself to the procedure and rules of decision governing the forum which it has sought." Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 134, 58 S.Ct. 785, 789, 82 L.Ed. 1224. We think it may also be said that a litigable interest which is or may be germane to a government-instituted suit, and which may be adversely affected by a judgment therein, is reasonably incident to the relief sought, and therefore is within the rule of consent by implication. It would seem, therefore, that a counterclaim which meets the requirements of Rule 24(a) (2) would likewise come within the consent by implication rule, hence cognizable in suits of that kind.

■ But assuming arguendo the counterclaim is not germane or reasonably incident to the main action, the two may permissively be joined if they present common questions of law and fact, provided of course the counterclaim rests upon its own jurisdictional footing. See Thompson v. United States, 4 Cir., 250 F.2d 43. The Government pleaded Document 80 "as having the effect and force of law * * * and contractual in nature, and is therefore binding on all persons." The intervenors likewise pleaded the Document as a binding contract, and the trial court found that it was "designed to effect contractual relations between the United States and water users whose existing rights would be affected or impaired by the operation * * * *" of the project. The Government now, however, denies that the Document imposed any contractual obligations on it.

It says that it was "merely a recommendation to Congress, not a contract" on which any interested party could sue as under the Tucker Act, 28 U.S.C.A. §§ 1346, 2401.

We fail to find any explicit promise to assume a direct obligation to compensate any of the affected parties for any injury caused by the construction and operation of the project. In the view we take of the counterclaim, however, it is unnecessary to decide the exact obligations imposed upon the Government by the terms and provisions of the Document. It is sufficient for jurisdictional purposes and for the purposes of full and complete relief that the Document did without doubt recognize the vested rights of the intervenors in the overflow of the Colorado River for the natural irrigation of their meadow lands. Indeed, even without such recognition, Colorado law vouchsafes it to them.[2] Cf. United States v. Gerlach Live Stock Co., 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539. Having that vested right, it cannot be taken for public purposes, such as this project, without imposing upon the Government the constitutional duty to pay just compensation therefor. Even without a contract the law implies a promise to pay just compensation for private property taken by the Government for public purposes. The implication is in consonance with the constitutional duty of the Government, and with common justice. United States v. Lynah, supra. The counterclaim asserts a vested interest in the natural overflow rights of the diverted waters and the impairment thereof by the operation of the project. It therefore states a claim upon which relief can be granted as one arising out of a constitutionally implied contract within the meaning of the Tucker Act. 28 U.S.C. § 1346. United States v. Lynah, supra; United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789; United States v. Gerlach Live Stock Co., supra; United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109.

The trial court found from the evidence that the intervenors' "natural overflow rights were clearly impaired by the construction and operation of the Big-Thompson project." We cannot say that finding is clearly erroneous. Such impairment was undoubtedly a taking or appropriation of vested property rights for public purposes. And, just compensation therefor required by the Constitution is not left to administrative discretion, unless of course the affected parties so agree. This counterclaim was tried and decided on the theory that the parties did in effect agree that an adequate artificial irrigation system was to be provided in lieu of the impairment of the natural overflow. If the parties reached an accord on that basis, we should not hesitate to give legal effect to it by determining the obligations it imposed and whether they had been fulfilled. But, whatever may be said for the Document, we do not think it was intended to confer upon the Secretary the power and authority to decide just compensation to be awarded for the taking of the overflow rights. Surely the Government cannot deny the force and effect of the Document as a binding contract, and at the same time plead that part of it which purports to commit to the Secretary of the Interior discretion whether just compensation has been provided for that which was taken.

2. Colorado Revised Statutes 1953 Ann. 147-3-14 provides:
   "*Irrigation of meadows.*—All persons who shall have enjoyed the use of the water in any natural stream for the irrigation of any meadow land, by the natural overflow or operation of the water of such stream, in case the diminishing of the water supplied by such stream, from any cause, shall prevent such irrigation therefrom in as ample a manner as formerly, shall have right to construct a ditch for the irrigation of such meadow, and to take water from such stream therefor. Their right to water through such ditch shall have the same priority as though such ditch had been constructed at the time they first occupied and used such land as meadow ground."

Nor must the intervenors stand or fall on the theory relied upon and on which relief was granted. Instead, they are entitled to recover on any legally sustainable theory supported by the proof. Hamill v. Maryland Casualty Co., 10 Cir., 209 F.2d 338; Dotschay for Use and Benefit of Alfonso v. National Mutual Ins. Co., 5 Cir., 246 F.2d 221. Nor are they bound by the prayer for relief, for it is no part of the claim. Preas v. Phebus, 10 Cir., 195 F.2d 61. It is sufficient that the court has found from the facts that vested property rights have been taken by the Government for public purposes. The Constitution affords the measure of the remedy, and the statute provides the procedure. The applicability of both to our facts is unmistakably plain.

The question then is the amount of just compensation—usually the fair value of that which was taken. An adequate irrigation system, or the cost thereof, judicially determined, may indeed equal just compensation for the impairment of the overflow rights. Ordinarily, monies expended in anticipation of a constitutionally compensable taking are not recoverable as such, see Ogden River Water Users' Ass'n v. Weber Basin Water Conservancy, 10 Cir., 238 F.2d 936, 942. They may, however, be competent evidence of just compensation, or the fair value of the right taken, such as the cost of preventative measures taken to prevent loss. See United States v. Dickinson, supra.

The proof in support of the judgment is that in 1940, De Berard spent certain sums of money in the construction of an irrigation system, and additional sums in 1950 and 1951, aggregating $10,000. The trial court specifically found that these expenditures were made necessary and were proper in order to irrigate the lands, and to minimize the damages caused by the failure of the Government to provide a substitute system of irrigation. But we cannot determine from the record whether the amounts expended on the irrigation system in 1940 were intended to provide a substitute irrigation system as a preventative measure, or whether they were expended for the purpose of supplementing the inadequate seasonal overflow, as the Government contends. So also, we cannot determine whether the expenditures in 1950 and 1951 were for compensable purposes. Nor can we determine from the record whether the expenditures were made by De Berard individually, or the corporation, so as to be recoverable by it as just compensation. And see United States v. Dow, supra. Inasmuch as the case was not tried on the theory of just compensation for the property rights taken, we cannot tell whether the proof supports the judgment on that theory, and we think, therefore, it must be vacated and the case remanded for reconsideration in accordance with the views herein expressed.

The Government pleads the six-year limitations as a jurisdictional bar to the maintenance of the suit under the Tucker Act. See 28 U.S.C. § 2401. No claim could accrue under the Tucker Act before the fact of taking could no longer be in controversy. And, since the fact of taking in our case is determinable only from physical evidence of seizure, we must look for the ultimate act of diversion by operation of the project for the accrual date of the claim. See United States v. Dickinson, supra; United States v. Dow, supra. The record is not clear when the project reached the point of diverting the water so as to impair the intervenors' rights. The first Congressional appropriation for the project was in 1937. According to the pleadings, the project was in the process of construction in 1949, when the main action was commenced. Certainly the counterclaim would not mature until the completion of the project and it was undoubtedly within six years from the date of the filing thereof.

Martin's Motion to Dismiss the Appeal

The original counterclaim apparently was in the nature of a class action in which a single claim was stated for joint relief. The intervenors, how-

ever, attempted to amend or supplement the original counterclaim to pray for damages to De Berard Cattle Company only in the sum of $10,000, in order to conform to the proof, and "to enable the De Berard Cattle Company to ask for the full amount of damages to which any person or corporation is entitled under the Tucker Act * * *" and "that the amount of damages above set forth is claimed by the De Berard Cattle Company and not by the intervenor, Earl J. Martin." In the colloquy between court and counsel, however, in which the amendment was allowed, the court indicated that he was allowing it only to claim $10,000 damage instead of the original claim for $5,000. As a single claim, it was not divisible for purposes of an appealable judgment. As multiple claims for separate and several judgments, it was not divisible for purposes of separate appealable judgments without an expressed determination required by Rule 54(b) F.R.Civ.P.[3] Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297; Burkhart v. United States, 9 Cir., 210 F.2d 602; Cold Metal Process Co. v. United Engineering & Foundry Company, 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311.

In its findings of fact and conclusions of law, the trial court adjudicated Martin's asserted rights, but no judgment was entered in behalf of Martin, and the court refused to dismiss the claim as to him, apparently leaving the claim ripe for judgment at some future and appropriate time. And, the parties apparently agree that no appealable judgment was entered either for or against Martin.

In this posture of the case, this court is without jurisdiction to entertain the

De Berard judgment absent compliance with Rule 54(b). Since, in any event, the case is to be remanded for further consideration, we will assume that on remand, the court will give proper consideration to the requirements of the applicable rule.

3. "(b) *Judgment Upon Multiple Claims.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."