UNITED STATES of America,
Appellant and Appellee,

v.

NORTHERN COLORADO WATER CON-
SERVANCY DISTRICT et al.,

F. E. Yust, Intervenor, Appellee
and Appellant.

Nos. 323–70, 324–70.

United States Court of Appeals,
Tenth Circuit.

Sept. 9, 1971.

Edmund B. Clark, Atty., Dept. of Jus-
tice (Shiro Kashiwa, Asst. Atty. Gen.,

Walter Kiechel, Jr., Acting Asst. Atty. Gen., James L. Treece, U. S. Atty., and Robert H. Whaley, Atty., Dept. of Justice, with him on the brief), for appellant and appellee.

Willis V. Carpenter, Denver, Colo., for appellee and appellant.

Before HILL and McWILLIAMS, Circuit Judges, and BRATTON, District Judge.

McWILLIAMS, Circuit Judge.

This appeal is from a type of inverse condemnation proceeding wherein the landowner, one F. E. Yust, recovered judgment against the United States in the sum of $10,000. Both the Government and Yust appeal.

This particular controversy is a protracted one, to say the least, the proceeding having been instituted in 1949. Some reference to general background material is essential to an understanding of the matter.

Pursuant to an act of Congress the Bureau of Reclamation in 1937 began construction of the Colorado-Big Thompson Project to accomplish the diversion of water from the Colorado River on the western slope to the eastern slope of the Rocky Mountains in Colorado. The project required the construction of many facilities, including the Green Mountain Dam on the Blue River and the Granby Dam on the Colorado River. The Green Mountain dam was first used for storing water in 1942 and the Granby Dam began storing water in 1950.

All concerned recognized that the construction of dams on the Colorado and Blue Rivers would inevitably change the regimen of the rivers and would materially affect the operations of ranches downstream. In this connection, Senate Document No. 80, 85th Cong., 2d session, in which the project was described, contained the following provision:

"* * * An adequate system, as determined by the Secretary of the Interior, shall be provided for the irrigation of the lands in the vicinity of Kremmling, now irrigated by either natural or artificial means and the installation therefor shall be a part of this project * * *."

As indicated above, the United States instituted the present proceeding in 1949, seeking to quiet its title to the water used in the Colorado-Big Thompson Project and to have a judicial interpretation of the duties imposed upon the Secretary of the Interior by Senate Document No. 80, 75th Cong., 2d session, in operating the Colorado-Big Thompson Project. In 1950 Yust and others, including Earl Martin and the De Berard Cattle Co. about whom more will be said later, intervened, with Yust seeking declaratory and injunctive relief, and also alleging damages in the sum of $15,000. Yust and the other intervenors were landowners in the vicinity of the confluence of the Blue River and the Colorado River and the gist of their individual claims was that the construction of the aforesaid dams and the resultant impounding of spring flood waters had interfered with the natural flooding each spring of bottom land on which was produced as the result of such "natural irrigation" a crop of hay.

In 1955 the matter came on for trial before the late United States District Judge Lee Knous who, as concerns Yust, Martin and De Berard, found in separate findings of fact that the replacement system contemplated by the aforesaid Senate Document No. 80 was inadequate and in connection therewith granted the Secretary of the Interior six months to make such systems adequate. When the Secretary of the Interior thereafter failed to take any action to improve the systems, the trial court in accordance with its findings of fact entered judgment for De Berard in the sum of $10,000. Martin apparently also sought judgment in his favor, though in his case there was never any actual entry of judgment. In any event, as concerns Martin and De Berard, the Government then appealed to this court. On appeal we upheld the position advanced by Martin and De Berard as to their right to intervene and also held that each had as-

serted a claim upon which relief could be granted. As to Martin, however, the appeal was dismissed because of the lack of a final judgment. As concerns De Berard, the judgment was vacated and remanded for further proceedings in connection with the determination as to the amount of compensation due him. *See* United States v. Martin, 267 F.2d 764 (10th Cir. 1959).

As concerns Yust, sometime after the Secretary of the Interior had failed to take any further steps to improve the system on Yust's lands (the Government incidentally had previously expended some $100,000 on Yust's diversionary works), Yust was allowed to amend his claim to seek relief under the Tucker Act. 28 U.S.C. § 1346. In 1964 Yust sought leave of the trial court to amend his claim so as to seek damages considerably in excess of the $10,000 limit imposed by the Tucker Act on a United States District Court and simultaneously therewith also filed a motion to transfer his claim to the Court of Claims, where he could be awarded compensation in excess of $10,000. On hearing, the trial court denied Yust's motion to thus amend and his motion to transfer.

The matter eventually came on for further hearing and culminated in the entry of a judgment for Yust against the United States in the amount of $10,000. The Government now appeals, contending generally that there was no such taking of property as would constitute a compensable taking under the provisions of the 5th amendment prohibiting the taking of private property for public use without just compensation. Yust also appeals, contending that the trial court erred in not transferring his claim to the Court of Claims.

In a real sense United States v. Martin, *supra,* is the "law" of this case, inasmuch as Yust was an intervenor along with Martin and De Berard in the same proceeding instituted by the Government and each asserted a similar claim against the Government. Accordingly, for practical purposes, Yust is on the same footing as Martin and De Berard. Be it the "law of the case," or not, *Martin* most certainly does effectively negate the argument that there was no compensable taking under the 5th amendment by the Government of Yust's property.

In that case, Martin and De Berard, like Yust, were the owners of ranch and meadow land near the confluence of the Blue and Colorado Rivers and for many years had depended upon the annual spring overflow for natural irrigation of meadow lands. In their respective counterclaims Martin and De Berard, like Yust, alleged that the construction of upstream reservoirs had diminished the seasonal overflow on their land and had thereby deprived them of their vested right to the irrigation of their meadow land by natural means. Upon hearing, the trial court upheld the position thus advanced by Martin, De Berard and Yust. In our earlier review of the matter as it related to Martin and De Berard, we declared as follows:

"We fail to find any explicit promise to assume a direct obligation to compensate any of the affected parties for any injury caused by the construction and operation of the project. In the view we take of the counterclaim, however, it is unnecessary to decide the exact obligations imposed upon the Government by the terms and provisions of the Document. It is sufficient for jurisdictional purposes and for the purposes of full and complete relief that the Document [Senate Document No. 80, 75th Cong., 2d session] did without doubt recognize the vested rights of the intervenors in the overflow of the Colorado River for the natural irrigation of their meadow lands. Indeed, even without such recognition, Colorado law vouchsafes it to them * * *. Having that vested right, it cannot be taken for public purposes, such as this project, without imposing upon the Government the constitutional duty to pay just compensation therefor. Even without a contract the law implies a promise to pay just compensation for private

property taken by the Government for public purposes. The implication is in consonance with the constitutional duty of the Government, and with common justice \* \* \*. The counterclaim asserts a vested interest in the natural overflow rights of the diverted waters and the impairment thereof by the operation of the project. It therefore states a claim upon which relief can be granted as one arising out of a constitutionally implied contract within the meaning of the Tucker Act \* \* \*." United States v. Martin, *supra*, at 770.

In support of our earlier determination that Martin and De Berard did have such a "property right" as would under the Constitution require the giving of just compensation upon its taking for a public use, reference was made to the provisions of the Colorado "Meadow Act." Colorado Revised Statutes, 1963 Ann. 148–3–14. That statute defines the "right" of persons who have enjoyed the use of water by natural overflow, when there be a diminishing of the water supplied by such stream, to construct a ditch for the irrigation of such meadow and to then take water from the stream for such purpose, with the right to water through such ditch to have the same priority as though such ditch had been constructed at the time they first occupied and used such land as meadow ground.

As indicated, we regard *Martin* to be a complete answer to the Government's present contention that there was no compensable taking of Yust's property. To argue that under the Colorado statute above cited Yust even now has the right to divert is in our view to beg the question. Under the aforesaid Senate Document No. 80 the Government assumed the responsibility of providing an adequate system for the irrigation of lands then being irrigated by either natural or artificial means. Having failed to so

do, according to *Martin*, the landowner has a claim upon which relief can be granted as one arising out of a constitutionally implied contract within the meaning of the Tucker Act. On this basis we hold that Yust, like Martin and De Berard, has such a right as requires the Government to award just compensation upon the taking thereof by the Government for a public use.

■ Yust appeals from the order of the trial court denying his request that his claim be transferred to the Court of Claims where he could assert a claim in excess of $10,000. Under 28 U.S.C. § 1406(c), which permits such a transfer "if it be in the interest of justice," a trial court has some discretion in ruling on a request of this nature, and under the circumstances we find no abuse of that discretion. The observation of the trial court that the request to transfer came "at a very late date" is indeed quite apropos. Yust's counterclaim was asserted in 1950 when he successfully asked to intervene in an action previously brought by the Government and to which he was of course not theretofore a party. In 1955 there was a trial on the so-called "merits," with the trial court holding that Yust did have a claim against the Government. It was not until some nine years later that Yust first sought to have his claim transferred to the Court of Claims. Under such circumstances we find no error on the part of the trial court in denying the request of Yust that his partially litigated claim be transferred to the Court of Claims. *See*, e. g., Peltzman v. Smith, 404 F.2d 335 (2d Cir. 1968), where it was held that the trial court did not abuse its discretion in declining to transfer to the Court of Claims under 28 U.S.C. § 1406(c) a suit primarily injunctive in nature but to which had been belatedly added a claim for damages.

Judgment affirmed.