IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**

January 18, 2022 12:28 PM
ST-2020-CR-00262
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, ) | |
| ) **CASE NO. ST-2020-CR-00262** | |
| Plaintiff, ) | |
| vs. ) 14 V.I.C. § 1052(a) | |
| ) 14 V.I.C. §§ 2253(a), 11(a) (2 Counts) | |
| ) 14 V.I.C. §§ 297(a)(2), 11(a) (3 Counts) | |
| **LOUVINA PRINGLE,** ) 14 V.I.C. §§ 2251(a)(2)(B), 11(a) (3 Counts) | |
| ) 14 V.I.C. §§ 295(3), 11(a) | |
| Defendant. ) 14 V.I.C. § 551(1) | |

Cite as: 2022 VI Super 5U

## MEMORANDUM OPINION AND ORDER

¶1      **THIS MATTER** is before the Court on:

1. Defendant Louvina Pringle's Motion To Sever Defendant ("Motion") and Defendant's Memorandum In Support Of Motion To Sever Defendant ("Memorandum"), filed March 26, 2021;

2. The People's Opposition To Defendant's Motion To Sever ("Opposition"), filed April 9, 2021;

3. Defendant's Reply To People's Opposition To Motion To Sever Defendants ("Reply"), filed April 19, 2021; and

4. Defendant's Addendum To Memorandum In Support Of Motion To Sever Defendants ("Addendum"), filed November 19, 2021 and December 9, 2021.[1]

¶2      Defendant's Motion will be denied as a joint trial will not compromise a specific trial right, no mutually exclusive antagonistic defenses are present, nor will it prevent the jury from making a reliable determination as to guilt or innocence.

---

[1] Attorney Howard Phillips filed two (2) Addendums supporting Louvina Pringle's severance motion. The two (2) Addendums are not identical word-for-word as they feature differences in word choice and organization. However, the argumentation and substance of the Addendums are the same. When summarizing the arguments, the Court will quote from the most recently filed Addendum.

## I. INTRODUCTION

¶3      On Tuesday, September 15, 2020, the Defendant Louvina Pringle ("Louvina")[2] was arrested and later charged by Information with eleven (11) criminal counts: (1) Kidnapping To Exact Money in violation of V.I. CODE ANN. tit. 14 § 1052(a); (2) Unauthorized Possession Of A Firearm During The Commission Of A Kidnapping To Exact Money in violation of 14 V.I.C. §§ 2253(a), 11(a); (3) Three (3) counts of Third Degree Assault in violation of 14 V.I.C. §§ 297(a)(2), 11(a); (4) Unauthorized Possession Of A Firearm During The Commission Of A Third Degree Assault in violation of 14 V.I.C. §§ 2253(a), 11(a); (5) Two (2) counts of Possession Of A Dangerous Weapon During A Third Degree Assault in violation of 14 V.I.C. §§ 2251(a)(2)(B), 11(a); (6) First Degree Assault in violation of 14 V.I.C. §§ 295(3), 11(a); (7) Possession Of A Dangerous Weapon During A First Degree Assault in violation of 14 V.I.C. §§ 2251(a)(2)(B), 11(a); (8) and Conspiracy in violation of 14 V.I.C. § 551(1).[3] In a separate Memorandum Opinion and Order, the Court consolidated the firearm possession charges and dismissed one of the possession of a dangerous weapon charges as they were multiplicitous.

¶4      Louvina moves for the Court to sever her trial from her Codefendants because she will be "substantially prejudiced by a joint trial."[4] Specifically, she alleges she will be "denied her right to confront her accuser/codefendant; the trial will be vulnerable to 'jury confusion;' and, Pringle will be subject to 'prejudicial spillover.'"[5] In an Addendum she further argues that her and the Codefendants' defenses are mutually antagonistic which further warrants severance.[6]

### A. Background Information

¶5      Louvina's arrest stems from events which allegedly occurred on or around September 13 and 14, 2020.[7] The People allege that Louvina contacted her brother, Percival Pringle ("Percival"), on September 13 around 3:45 p.m. and requested that Percival assist her boyfriend, Troy Harrigan ("Harrigan"), in moving two (2) generators.[8] Harrigan then directed Percival to a construction site, where two (2) masked men armed with a pistol with a silencer approached Percival and began threatening him verbally and physically, including sticking the handgun in his mouth, and demanding the payment of certain monies they believed stolen.[9]

¶6      Percival was subsequently chained, beaten with both a pistol and hammer, cut with a knife, and otherwise tortured over the period of his kidnapping.[10] Throughout this time, Louvina was

---

[2] As the Defendant's brother shares her last name, and he is the victim in this case, the Court will use the first names for Defendant and the victim.
[3] Affidavit of Police Detective Brian Bedminster ¶ 27; Information 1-5.
[4] Def.'s Mot. 1.
[5] Def.'s Mot. 1.
[6] Def.'s Addendum 1.
[7] Affidavit of Police Detective Brian Bedminster ¶¶ 3, 7.
[8] Affidavit of Police Detective Brian Bedminster ¶ 7.
[9] Affidavit of Police Detective Brian Bedminster ¶¶ 8-10.
[10] Affidavit of Police Detective Brian Bedminster ¶¶ 12-16.

allegedly in constant contact with Harrigan by phone, and she also spoke to Percival, demanding he reveal the location of the stolen eight hundred thousand dollars ($800,000.00).[11]

¶7    After approximately one (1) day of imprisonment and torture, Percival's kidnappers grew impatient and allegedly planned to kill him, dismember his body, and dispose of it; at which point Percival broke to escape, jumping into a nearby blue Nissan car that was still running.[12] Percival then pressed on the gas while Harrigan attempted to wrestle control of the car from him.[13] A patrolling police cruiser came upon the two (2) men fighting in the blue Nissan and a police officer came to assist Percival, who was being beaten by Harrigan; Harrigan then fled.[14] Percival was taken to the hospital and Harrigan was subsequently taken into custody.[15] The blue Nissan was discovered to be a rental car, rented by Louvina.[16]

### B. Parties' Arguments

¶8    Louvina recognizes that joinder of defendants is permitted under V.I.R. CRIM. P. 8(b)[17] and, as recognized under the ruling in *People*[18] *v. Najawicz*,[19] that joint trials are the rule, not the exception.[20] However, Louvina argues that an exception to the general rule is warranted in this case as "she will suffer substantial prejudice from a trial joined with Codefendant Harrigan."[21] Louvina believes that testimony from a Virgin Islands Police Deputy Chief will be introduced at trial thatthe Deputy Chief reportedly heard an unsolicited admission from Harrigan, Louvina's codefendant, admitting to the alleged crimes.[22] Specifically, Harrigan is reported to have spontaneously stated: "yeah, that guy owed me $800,000. I tied him up and I told him if I don't get back my money, I'm going to kill him."[23]

¶9    Louvina cites to *People*[24] *v. Stephens*[25] to argue that if joinder of defendants appears to prejudice a defendant the Court may sever the defendants' trial.[26] Louvina argues that "Harrigan's

---

[11] Affidavit of Police Detective Brian Bedminster ¶¶ 10, 11, 14.

[12] Affidavit of Police Detective Brian Bedminster ¶¶ 15-17.

[13] Affidavit of Police Detective Brian Bedminster ¶¶ 16-19.

[14] Affidavit of Police Detective Brian Bedminster ¶ 20-22.

[15] Affidavit of Police Detective Brian Bedminster ¶¶ 21-23.

[16] Affidavit of Police Detective Brian Bedminster ¶ 25; July 29, 2021 Suppression Hearing.

[17] V.I.R. CRIM. P. 8(b) states:

> The information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

[18] Louvina's Memorandum misidentifies this case as *Prosecution v. Najawicz*. Def.'s Mem. 3.

[19] 2019 VI Super 66.

[20] *Id.* at ¶12. Def.'s Mem. 3.

[21] Def.'s Mem. 3.

[22] Def.'s Mem. 1, 3-4.

[23] Def.'s Mem. 2.

[24] Louvina's Memorandum misidentifies this case as *Prosecution v. Stephens*. Def.'s Mem. 4.

[25] Case No. ST-16-CR-377, 2018 WL 4407034 (V.I. Super. Ct. Sept. 12, 2018).

[26] Def.'s Mem. 4.

overheard admission, coupled with their decades old relationship serves to prosecute [Louvina] as well as the Prosecution's attorney."[27] Louvina argues that, since her defense is she did not participate in the kidnapping or torture, Harrigan's confession and their long standing relationship raises the inference that "she must have known what was happening and participated."[28]

¶10     Citing to *Gov't of the V.I. v. Petersen*,[29] Louvina argues that mutually exclusive defenses are antagonistic and require severance.[30] Louvina argues that her defense of general denial is antagonistic to Harrigan's admission.[31] Principally, she argues "[i]f a juror believes that Harrigan kidnapped and tortured Pringle's brother for the money he stole from her locked bedroom, a juror will likely — as did the police during her interrogation — disbelieve that Pringle did not participate in getting Harrigan's money back."[32] Louvina then argues that the potential prejudice of "being tried with an alleged confessor/boyfriend for a crime against her brother" outweighs the judicial economy of a joined trial, citing to *United States v. Blunt*.[33] Analogizing to the *Blunt* case, Louvina contends that Harrigan's admission plus "the fact that the money was taken from her locked bedroom closet is too tempting for even a reasonable juror to infer that Pringle must have known."[34]

¶11     Louvina also cites *Bruton v. United States*[35] for the assertion that a codefendant' admission used against another codefendant would be prejudicial if the confessor did not take the stand.[36] Louvina states that likewise here Harrigan's outburst would be admissible against him, but he has a right not to testify and subject himself to cross-examination, depriving Louvina of her right to confront him.[37] Louvina asserts that "[u]nassailable admissions of non-testifying co-defendant implicating Pringle is the epitome of prejudice and unconstitutional."[38] Louvina argues that "Harrigan's admission facially implicates" her and that it is "unreasonable to argue that a limiting instruction could unmoor Harrigan's admission from Pringle."[39]

¶12     Finally, Louvina argues that the numerous violent crime and dangerous weapon charges will result in "prejudicial spillover."[40] Louvina states that the jury will hear about Percival's violent torture and kidnapping and that "[i]t is reasonable to assume that hearing this testimony with Harrigan and [Louvina] sitting at the counsel table will prejudice [Louvina] in the jury's mind."[41] Lastly, Louvina argues that monetary judicial economy favors severance as it will reduce costly

---

[27] Def.'s Mem. 4.

[28] Def.'s Mem. 5.

[29] Criminal Nos. 156/1985, 157/1985, 158/1985, 1985 V.I. LEXIS 47 (V.I. Super. Ct. July 16, 1985).

[30] Def.'s Mem. 5.

[31] Def.'s Mem. 5.

[32] Def.'s Mem. 5.

[33] 930 F.3d 119, 121 (3d Cir. 2019) (ruling new severed trials for two married codefendants "so that they may each have an opportunity to present their cases without any unwarranted constraints on their trial rights"). Def.'s Mem. 5.

[34] Def.'s Mem. 7.

[35] 391 U.S. 123 (1968).

[36] Def.'s Mem. 7.

[37] Def.'s Mem. 7.

[38] Def.'s Mem. 8.

[39] Def.'s Mem. 8-9.

[40] Def.'s Mem. 10.

[41] Def.'s Mem. 11.

attorney "wait time," since in a severed trial that attorney would spend the whole time actively representing Louvina as opposed to "wasting precious hours at counsel table waiting throughout the trial for her turn."[42]

¶13    The People, citing to *United States v. Walker*,[43] counter that the defendant must show specific and compelling prejudice, and courts recognize that some degree of bias is inherent in any joint trial.[44] The People point out that the facts that Harrigan and Louvina were in a lengthy relationship and that the money was allegedly stolen from her room "are not facts that the Defendant would be spared if her case was severed" as any family member or the victim could testify to them and she admitted them herself during her interview.[45] The People also differentiate the instant case from the caselaw cited by Louvina, as Harrigan's brief admission implicates only himself, while the cases cited feature defendants who made admissions that implicated both themselves and their codefendants.[46] Lastly, the People note that all of the Defendants in the instant case are charged identically, so there is no risk that the charges of one may "spillover" and prejudice Louvina.[47]

¶14    Louvina replies that she requests only the severance of her and Harrigan, not all Codefendants, so she argues that she need satisfy a lesser degree of potential prejudice.[48] Louvina argues that the 1956 case *Daley v. United States*[49] cited by the People is distinguishable as none of the seven defendants in that case moved to sever.[50] Louvina further submits that:

> 1) Pringle and Harrigan's defenses are mutually exclusive, because he is alleged to have confessed to the crime where she has not; 2) Pringle cannot compel Harrigan to testify that even though he is guilty she is not; and 3) Harrigan's confession WILL incriminate Pringle because of their 14-year intimate relationship, plus the allegation that Harrigan's money was taken by her brother, from her room.[51]

¶15    Louvina also states that, while the People argue that the facts around Louvina's involvement will come to light regardless, the Court may suppress her interview statements,[52] and that second, if there is sufficient evidence to convict Louvina, "piling on" Harrigan's statement is unnecessary.[53] Louvina argues the short length of Harrigan's confession does not matter, she is still tied to it by the facts of the case (her relationship with the Harrigan and the victim as well as

---

[42] Def.'s Mem. 12.
[43] 720 F.2d 1527 (11th Cir. 1983).
[44] Pl.'s Opp'n 3.
[45] Pl.'s Opp'n 4-5.
[46] Pl.'s Opp'n 5.
[47] Pl.'s Opp'n 5-6.
[48] Def.'s Reply 2-3.
[49] 231 F.2d 123 (1st Cir. 1956).
[50] Def.'s Reply 3.
[51] Def.'s Reply 4.
[52] In 2021 VI Super 91U the Court found Louvina's statements to be voluntary and therefore the Court declined to suppress the statements.
[53] Def.'s Reply 5.

the location of the money).[54] Additionally, Louvina argues that the danger of "spillover" between her and Harrigan is greater than between her and the other Codefendant because of their relationship.[55]

¶16     In her Addendum, Louvina "submits that *mutually exclusive* and *irreconcilable* antagonistic defenses is an additional reason to sever the trials[.]"[56] Louvina argues that newly produced evidence has come to light, namely evidence from an interview with her sister, Mary Pringle, which she states exculpates her and inculpates Harrigan.[57] Louvina insists she is "not merely finger-pointing" and she argues that her defense and Harrigan's involve a "fundamental disagreement over core and basic facts" because "[h]er defense is that she enlisted her sister to help her, and was pressing Harrigan to release her brother" and "[t]hese facts fundamentally disagree with a claim of denial by Harrigan."[58]

¶17     Although stating in her previous Motion that Harrigan's admission to the crime is prejudicial, Louvina in the Addendum argues that "[i]t is anticipated that Harrigan will deny kidnapping Percival Pringle" and that "Pringle will not only deny any involvement in kidnapping [Percival,] her defense will implicate co-defendant Harrigan."[59] Louvina also argues that these defenses are so irreconcilable that a limiting jury instruction would be "ineffectual."[60] Louvina further cites to a Colorado case, *People v. Gutierrez*,[61] and she urges the Court to not adopt the view that a conspiracy charge dictates a join trial.[62] In that case, one defendant, Gutierrez, blamed the entirety of the crime on another defendant, Sanchez, who in turn blamed Gutierrez and stated he was the sole shooter.[63] Louvina also argues that the prejudice against her and Harrigan need not be symmetrical to warrant severance.[64] Finally, Louvina argues that because her exonerating witness, her sister, is hostile to Harrigan, the defenses are antagonistic and a severance is warranted.[65]

## II.     LEGAL STANDARD

### A. Motion To Sever

¶18     Virgin Islands Rule of Criminal Procedure 8(b) provides for joinder of defendants:

> The information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or

---

[54] Def.'s Reply 6.
[55] Def.'s Reply 6-7.
[56] Def.'s Addendum 1.
[57] Def.'s Addendum 1.
[58] Def.'s Addendum 7.
[59] Def.'s Addendum 4.
[60] Def.'s Addendum 8.
[61] 499 P.3d 367 (Colo. App. 2021).
[62] Def.'s Addendum 8.
[63] *Gutierrez*, 499 P.3d at 371-72.
[64] Def.'s Addendum 9-11.
[65] Def.'s Addendum 11

transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.[66]

¶19     Joint trials are the rule as "[t]here is a public interest in joint trials. They avoid time consuming and expensive trials. They also avoid recalling witnesses, conserve judicial resources and lessen the burden on jurors who must make sacrifices."[67] Joint trials are particularly favored when the codefendants are jointly charged, the charges can be proved by the same evidence, and the charges arise from the same occurrence, transaction, or series of events.[68] Virgin Islands Rule of Criminal Procedure 14(a) provides for relief from a prejudicial joinder: "If the joinder of offenses or defendants in an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."[69]

¶20     While many of the cases dealing with prejudicial severance interpret Federal Rule of Criminal Procedure 14, because the Federal Rule and Virgin Islands Rule mirror each other, and the Court used the Federal Rules of Criminal Procedure prior to adoption of the Virgin Islands Rules of Criminal Procedure, cases interpreting the Federal Rule are highly persuasive. As stated in *People v. Roberts*,[70] "[f]or a defendant to prevail on a motion to sever . . . s/he has a heavy burden and must 'pinpoint clear and substantial prejudice resulting in an unfair trial.'"[71] The Court will grant severance only when "'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'"[72]

¶21     Joined defendants confront "the additional risk of antagonistic defenses: to defend himself properly, one codefendant may have to produce evidence that incriminates another. The latter can cross-examine his codefendant on those portions of the testimony that incriminate him, but he is forced to defend against two accusers, the government and his codefendant."[73] Mutually antagonistic defenses may be highly prejudicial if they are mutually exclusive[74]—that is, "'the

---

[66] V.I.R. CRIM. P. 8(b).

[67] *Gov't of the V.I. v. Petersen*, Nos. 156/1985, 157/1985, 158/1985, 1985 V.I. LEXIS 47, at *3 (V.I. Super. Ct. July 16, 1985) (considering a motion to sever under the substantially similar Federal Rule of Criminal Procedure 14); *see also People v. Najawicz*, 2019 VI Super 66, ¶ 12 ("The People accurately point out that joint trials are the rule, rather than the exception, and that Najawicz bears the burden of demonstrating substantial prejudice from a joint trial.").

[68] *Id.* (citing first *United States v. Gambrill*, 449 F.2d 1149, 1159 (D.C. Cir. 1971); then *United States v. Echeles*, 352 F.2d 892, 896 (7th Cir. 1965)) ("Joint trials are especially favored where, as here, the defendants are jointly charged and the offenses can be proven by the same evidence and is derived from the same transaction.").

[69] V.I.R. CRIM. P. 14(a).

[70] Nos. SX-14-CR-136, SX-14-CR-137, SX-14-CR-144, 2016 V.I. LEXIS 232 (V.I. Super. Ct. Oct. 25, 2016).

[71] *Id.* at *2 (quoting *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994)).

[72] *Id.* at *2-3 (quoting *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010)).

[73] Robert O. Dawson, *Joint Trials of Defendants in Criminal Cases: An Analysis of Efficiencies and Prejudices*, 77 MICH. L. REV. 1379, 1422 (1979).

[74] *Gov't of the V.I. v. Petersen*, Nos. 156/1985, 157/1985, 158/1985, 1985 V.I. LEXIS 47, at *5 (V.I. Super. Ct. July 16, 1985) (citing *United States v. Crawford*, 581 F.2d 489, 491 (5th Cir. 1978)).

essence or core of the defenses must be in conflict such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.'"[75]

¶22     However, "[m]utually antagonistic defenses are not prejudicial per se. [V.I.] R. CRIM. P. 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the [trial] court's sound discretion."[76] A risk of prejudice is more likely to occur if: (a) evidence probative of a codefendant's guilt, but only technically admissible against another defendant is introduced, or  (b) "if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial."[77]

¶23     Looking to cases outside of the Virgin Islands, the District of Columbia Court of Appeals has regularly ruled that "'the mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating another [are] insufficient grounds to require separate trials.'"[78] The Ninth Circuit Court of Appeals has stated that "[m]utually exclusive defenses are said to exist when acquittal of one codefendant would necessarily call for the conviction of the other."[79] An example would be when two defendants, both charged with possession of an unregistered firearm, each assert the other defendant was the owner.[80]

### III.   ANALYSIS

####   A. Harrigan's confession is not mutually adverse to Louvina's defense and does not substantially prejudice her

¶24     Louvina argues that her defense, that she was not a participant, is at odds with Harrigan's defense. Louvina does not state what Harrigan's defense is in her first Motion, but rather points to Harrigan's confession that he did commit the crime. In essence, Louvina argues that her defense that she "did not do it" is antagonistic to Harrigan's admission that he "did do it." Patently, Louvina's defense is *not* mutually averse to Harrigan's admission, as one person's insistence that she was not involved in a crime is wholly congruent with another person's declaration that he was involved in a crime.

¶25     The Court agrees with the People that Louvina's reliance on the facts of *Bruton* is misplaced. In that case, "[a] postal inspector testified that Evans orally confessed to him that Evans *and* petitioner committed the armed robbery."[81] The United States Supreme Court held that a

[75] *United States v. Lee*, 744 F.2d 1124, 1126 (5th Cir. 1984) (quoting *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir. 1984)).

[76] *People v. Stephens*, No. ST-16-CR-377, 2018 V.I. LEXIS 94, at *6 (V.I. Super. Ct. Sept. 12, 2018) (quoting *People v. Ponce*, 62 V.I. 458, 466 (V.I. Super. Ct. June 25, 2015)).

[77] *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (citing *Bruton v. United States*, 391 U.S. 123 (1968); then citing *Tifford v. Wainwright*, 588 F.2d 954 (CA5 1979) (per curiam)).

[78] *United States v. Ehrlichman*, 546 F.2d 910, 929 (D.C. Cir. 1976) (quoting *United States v. Barber*, 442 F.2d 517, 530 (3rd Cir.), *cert. denied*, 404 U.S. 958 (1971)) (brackets in original).

[79] *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991) (citing *United States v. Adler*, 879 F.2d 491, 497 (9th Cir. 1988)).

[80] *United States v. Crawford*, 581 F.2d 489. 491-92 (5th Cir. 1978).

[81] *Bruton*, 391 U.S. at 124 (emphasis added).

codefendant's confession implicating another codefendant was substantially prejudicial enough to warrant severed trials because the confessing codefendant subsequently exercised their Fifth Amendment protection against self-incrimination and did not take the stand or otherwise submit to cross-examination, depriving the codefendant of their right to confrontation.[82]

¶26  Likewise, in the *Blunt* case relied on by Louvina, one of the codefendants in that case had a defense that directly implicated her codefendant:  Blunt argued that her codefendant,  Hall, forced her to make fraudulent calls and she acted under duress.[83] However, the instant case is notably different than those two cases, Harrigan's confession implicates *only himself*: he does not use "we" or refer to anyone else in his spontaneous admission, he only uses "I" statements, and he takes responsibility for the actions of kidnapping, tying up of Percival, and threats to kill Percival.

¶27  Thus, while Louvina argues that she is deprived of her right to confront her accuser, there is no accuser here. Louvina states that jurors' may infer, based on her relationship with Harrigan, that she had some role in the criminal conspiracy, but such an inference would exist with or without separate trials and is not a result of Harrigan's confession. In effect, Louvina requests the Court to recognize a theory of "accusation by inference," a nebulous and unwieldy approach which the Court declines to adopt.

¶28  While Harrigan's confession coupled with Louvina and Harrigan's relationship could cast Louvina in a negative light, it by no means serves "to prosecute" Louvina as she suggests. It is also possible that Harrigan's confession implicating only himself could be taken by a juror as absolving Louvina of any alleged participation; at the very least it certainly does not specifically incriminate her. The facts which do incriminate Louvina—her admissions to police in a videotaped interview, her relationship with the victim and codefendant, the location of the allegedly stolen money—exist entirely separate from any purported outburst by Harrigan. Circumstances can be incriminating; this does not equate to a testimonial confession implicating a codefendant or specific substantial prejudice.

¶29  As to Louvina's added argument that her and Harrigan's defenses are mutually antagonistic, the Court is not so persuaded. Louvina states that she is prejudiced by Harrigan admitting to the kidnapping, but also that she is prejudiced by Harrigan's planned defense of denying he was involved in the kidnapping. While these lines of argumentation are at odds with each other, Louvina and Harrigan's stated defenses are not. Louvina's argument that she was duped into delivering her brother to Harrigan and she attempted to have him released is not mutually antagonistic to Harrigan's alleged defense of denial, that he did not do the kidnapping. Harrigan is not arguing he tried to get Percival released and that Louvina was the kidnapper, he is simply pleading he did not do it. A codefendant may implicate another defendant, such implications are only mutually antagonistic if the other defendant implicates the codefendant of the same crime in such a way that one of them is precluded from having done it (that is, it is not possible for both of them to have committed the same crime).

---

[82] *Id.* at 136-37.

[83] *Blunt*, 930 F.3d at 128 ("At a pre-trial conference, she stated to the District Court that she would be compelled to raise a 'mutually antagonistic defense' of duress in her trial testimony due to Hall's refusal to stipulate to certain facts prior to trial. At trial, Blunt did indeed testify in her own defense.").

¶30    The Colorado case cited by Louvina is elucidative of that point. While one of the defendants in *People v. Gutierrez* stated he was simply going to deny involvement, his defense was actually that his other codefendant was the real shooter. [84] The court in that case stated:

> While it is true that Gutierrez asserted general denial as his stated theory of defense in required written disclosures to the prosecution, it is clear from counsel's opening and closing statements and arguments on motions to sever, as well as the evidence presented at trial, that Gutierrez did more than simply deny involvement. Bolstered by undisputed evidence that Schnaare died from four bullets fired from one gun, Gutierrez's counsel argued in his opening and closing statements that not only was Gutierrez unaware of Sanchez's prior conflict with the victim and had no involvement with the shooting, but also that the evidence indicated that Sanchez was the sole shooter.[85]

¶31    Thus, it was not that one defendant implicated another defendant who simply had a defense of general denial, it was that the other defendant's defense directly implicated his codefendant with specific facts and in such a way that for the one to be guilty, the other would necessarily have to be acquitted. This is because there was only one gun and one shooter, but two people accused. Here, Harrigan's defense features no facts or theories which, should the jury find them credible, they would have to find Louvina guilty as a result. A jury could well find Harrigan guilty and that Louvina had been duped; or that Harrigan was guilty and Louvina was also guilty of helping trick her brother in furtherance of the kidnapping plot; or that neither Louvina nor Harrigan are guilty. That Louvina implicates her Codefendant and may proffer evidence in the form of a singular witness who may be hostile to one of her Codefendants, does not qualify as a mutually antagonistic defense as Harrigan's general denial defense does not feature adverse facts that would necessarily call for Louvina's conviction if believed.

¶32    Not only is there no specific trial right at issue, undue substantial prejudice, or mutually antagonistic defenses here, but there is a strong public interest in a joint trial in the instant case. All the Codefendants face the same charges. There is one overarching criminal activity here—the kidnapping and torture of Percival—that all are alleged to have participated in, and each Codefendant is tied to the actions of the others through their common criminal conspiracy. The evidence to be introduced, witnesses to be subpoenaed, and arguments to be made to the jury are likely to be the same or to have substantial overlap. Lastly, due to the cessation of jury trials during the Covid-19 pandemic, there is an even greater Court interest in bringing criminal defendants speedily to trial and in the efficient organization of criminal jury trials. Therefore, Louvina's Motion will be denied.

---

[84] *Gutierrez*, 499 P.3d at 371.
[85] *Id.*

## IV.    CONCLUSION

¶33    Based upon the foregoing, the Court finds that Harrigan's confession implicating only himself is different from a codefendant's confession accusing another codefendant (or implicating themselves and another codefendant), and Louvina relationship with the confessor does not transform Harrigan's confession into an accusation. The Court further finds that: (1) the facts and circumstances implicating Louvina exist entirely separate from Harrigan's confession; (2) admission of Harrigan's statement, implicating only himself, will not serve to substantially prejudice Louvina; and (3) Louvina's argument that severance is warranted because her and Harrigan's defenses are mutually antagonistic fails, because her defense that she was tricked by Harrigan and Harrigan's defense of general denial do not feature core conflicting facts which would require acquittal of one of the parties should one set of facts be found credible. Accordingly, it is hereby

ORDERED that Louvina Pringle's Motion To Sever Defendant, filed on March 26, 2021, is **DENIED**; and it is further

ORDERED that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.

DATED: January 18 , 2022

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

ATTEST:

**TAMARA CHARLES**
Clerk of the Court

BY: _____ 01/19/2022
for **LATOYA CAMACHO**
Court Clerk Supervisor _____/_____/____